Nathaniel T. Helman, J.
Petitioners Yonkers Raceway Inc. and Tanbro Fabrics Corporation, a taxpayer, apply to this court for an order (1) enjoining respondent New York City Off-Track Betting Corporation (OTB) from undertaking, arranging or contracting for live television broadcasting of harness racing combined with off-track betting, in disregard of the prior decision of the Harness Racing Commission of November 18, 1971; and (2) directing respondent Harness Racing Commission to implement its said decision by requiring that any corporations undertaking to engage in live television broadcasts coupled with legal off-track betting, refrain from such broadcasting of harness racing. By way of cross motion OTB seeks a dismissal of the petition.
By chapter 1095 of the Laws of 1971, section 38 of chapter 254 of the Laws of 1940 (Pari-Mutuel Revenue Law) was amended to authorize the State Harness Racing Commission to permit harness racing during a previously restricted period between December 16 and January 2 inclusive. This privilege was limited, however, to counties having a population of 250,000 or less and only ‘ ‘ if the commission is satisfied that a special occasion makes the holding of such meetings and the conduct of such races on such day or days proper or necessary An application having been filed by Monticello for leave to conduct racing meetings between December 15, 1971 and January 8, 1972, permission therefor was granted by the commission in conjunction with the ‘ ‘ Sullivan County Winter Carnival ’ in order to induce and generate tourism.
Two contracts were then entered into by Monticello with OTB. Under the terms of the first agreement described by the parties as the “Interface Contract ”, Monticello agreed to provide space and facilities necessary for the incorporation of the offtrack wagers of OTB into the on-track betting pools at Monticello. In consideration for such interfacing and facilities, OTB agreed to pay Monticello a percentage of off-track wagering, *884 pursuant to section 120 of the Pari-Mutuel Revenue Law (L. 1940, ch. 254, as amd. by L. 1971, ch. 423, § 5).
Under the terms of the second contract OTB was granted exclusive television broadcasting rights for all meets at Monticello for the period from December 15, 1971 to the end of the winter meet terminating in January of 1974. For such television rights, OTB agreed to pay $600,000 (less a small credit of 1%%) on races run at Monticello during such period. In addition, OTB agreed to expend $50,000 in promoting such television programs, with the understanding and agreement that profits resulting from the sponsorship of the programs were to be divided equally between the contracting parties.
The agreements having been duly deposited with the Harness Racing Commission, Yonkers and Roosevelt Raceways, as licensed track operators, protested to the commission that the contract provisions violated existing statutes in several respects. A formal hearing thereafter was held by the Harness Racing Commission for a reconsideration of Monticello’s application for a license. At the conclusion of the hearing, at which several witnesses testified, the commission sustained the views of the protesting track operators, and amended the original license of Monticello to include the condition that the licensee do not conduct its racing programs in conjunction with any television broadcasts. Monticello and OTB thereupon brought proceedings in the Supreme Court, Sullivan County, to review the determination of the commission, and were successful in obtaining an adjudication upholding the validity of their television agreement, and further staying the commission from enforcing its judgment (68 Misc 2d 579).
A notice of appeal was then filed by the Attorney-General from the decision of the Supreme Court Sullivan County, which in effect stayed the order and judgment of that court pursuant to CPLR 5519. OTB and the Sullivan County Racing Association then joined once more in an ex parte application before the Appellate Division, Third Department, for leave to vacate the stay in effect pursuant to CPLR 5519, and that court by its own order vacated such statutory stay, thus reinstating the order and judgment of Mr. Justice Mahoney of the Sullivan County Supreme Court. Presently, therefore, the contracting parties are free to proceed with the implementation of their agreements.
It is the claim of the petitioners that they were not a party to the Sullivan County proceeding (although respondents indicate that their names appeared therein as interveners), that they *885 were not served with any of the papers thereon, nor did they appear or authorize an appearance on their behalf. It is therefore their contention that the issues before the Sullivan County Supreme Court are not res judicata, that litigations involving OTB as a party are restricted by statute to a venue within New York City, and that in any event, several issues before this court on the present application were not determined by the Supreme Court in Sullivan County.
It is clear that by the provisions of sections 117, 118 and 141 of the Pari-Mutuel Revenue Law (L. 1940, ch. 254, as amd. by L. 1971, ch. 423, §§ 1, 3) OTB acquired the statutory authority to accept wagers on races run at Monticello from bettors in New York City. Did this right to accept such wagers prevent OTB from employing television to stimulate bettors ’ interest in races which were held in Monticello Í While several aspects of this question have already been reviewed in the prior determination of the Sullivan County Supreme Court, the direct question of whether the off-track betting law, or any provision of the New York State pari-mutuel statutes, render the television contract between Monticello and OTB illegal, becomes an important consideration on this application.
At the hearing before the Harness Racing Commission for a reconsideration of the petitioners’ application for a license, the crucial question as to the right of a licensee to “ televise ” was answered by the commission in this fashion: “ Whether or not such conduct since it would be accomplished indirectly through the device of television would constitute an actual violation of the Pari-Mutuel Law is debatable.” At another point, it stated that its holding did not “ foreclose future exploration of the subject of televised races, should additional facts and knowledge become available. ’ ’ Indeed, the record of the commission shows that three tracks, Yonkers Raceway, Roosevelt Raceway and Saratoga Raceway, have at different times over a period of years employed television as a promotional aid designed to increase track attendance. The programs were broadcast one night a week from local stations and were discontinued respectively, by Roosevelt in 1961, by Yonkers in 1962, and by Saratoga after 1970, because the track management, in each case, concluded that the broadcasts discouraged attendance rather than increased it.
In essence, therefore, petitioners in this proceeding have failed to demonstrate by clear and convincing evidence that the use of telecasts by a licensee constitutes a clear violation of existing statutes.
*886 The principal challenge to the contemplated program of the respondents in telecasting Monticello races is with relation to an existing statutory restriction on the granting of a harness track license within 25 miles of another licensee. On the one hand, it is contended by petitioners that the arrangement by OTB for a live television broadcasting in the manner to be undertaken is a subterfuge to circumvent the aforesaid geographical restriction. Respondents argue, however, that the statutory restriction is limited to the physical proximity of harness tracks to each other, rather than to the ephemeral proximity wrought by a telecast. While this issue was placed squarely before the Supreme Court Sullivan County, and resolved favorably to the respondents, a subject which will no doubt be reviewed in the immediate future by the Appellate Division, Third Department, it is sufficient for the purposes of the present proceeding for this court to hold that the issue is at best a doubtful one. Under general principles of statutory construction, this court would be bound to hold that the geographical restriction contained in the statute must be strictly construed and that, had the Legislature intended to embrace telecasts outside the geographically restricted area within the scope of the statutory provisions, it would have by proper amendment to existing statutes so provided.
OTB falls within the classification of a “ participating municipality ’ ’ and as such is authorized to acquire appropriate space and facilities at any track falling within the jurisdiction of the commission. An examination of the enabling statutes reveals that the only reference in any of them to telecasting is one relating to “ betting parlors ”. “ The commission shall not make any radio or television broadcast of any horse race available for view or hearing in the public area of any facility where bets may be placed, and shall not permit any such broadcasts to be so made available in such area.” (Pari-Mutuel Revenue Law, § 124; L. 1940, ch. 254, as amd. by L. 1970, ch. 143, § 1 and L. 1971, ch. 423, § 1.)
Nor is the court persuaded by petitioners’ contention that a live television broadcast of a harness race is equivalent in ‘ ‘ performance ” to a physical appearance at the track. Counsel’s attempt to equate such a “ performance ” with the reproduction of copyrighted music is misplaced. Cases such as Buck v. Jewell-LaSalle Realty Co. (283 U. S. 191) and Fortnightly Corp. v. United Artists (392 U. S. 390) deal with the Copyright Act which provides the holder with several1 ‘ exclusive ’ ’ rights, including the right to “ perform the copyright work publicly *887 for profit ”. (U. S. Code, tit. 17, § 1, suMs. [d], [e].) In fact, the Fortnightly case distinguished between the exhibitor and the 1 ‘ viewer ’ ’, regarding the latter as a “ member of a theatre audience”, and a 1 ‘ passive beneficiary”. The answer, of course, must come from an examination of the scope and meaning of the respective statutes involved. The basic issue raised here is whether the enabling acts or the license originally granted to Monticello proscribed telecasts outside the geographically restricted area.
An important issue presented by the opposing papers is whether or not petitioners have duly met the fundamental requirement of proof of irreparable damage as a basis for injunctive relief. Petitioners rely on the evidence submitted before the Harness Racing Commission at the hearing, at which a number of witnesses testified that the economic interests of the track owners would be seriously affected in various areas of the State by television broadcasts within New York City. These statements, however, were unsupported by statistical information, and added little to the generally accepted view that OTB would profit from such broadcasts to the detriment of track owners throughout the State. As pointed out by Justice Mahoney of the Sullivan County Supreme Court in his learned opinion, a review of the legislative hearings conducted prior to the enactment of the New York State Off-Track Pari-Mutuel Law, would inevitably lead to the conclusion that the Legislature was well aware that off-track betting by its nature would cause a marked decline both in State revenues and those of the track operators.
It is of interest that in response to the claim of track operators that off-track betting would be injurious to racing interests, the Legislature enacted section 121 of the Pari-Mutuel Revenue Law (L. 1940, ch. 254, as amd. by L. 1970, ch. 143, § 1; L. 1970, ch. 145; L. 1971, ch. 423, §§ 1, 6), which establishes a formula for reimbursement for losses suffered by track operators. If a track is located within 50 miles of a municipality and has maintained a program equal in quality to the 1969 program by virtue of its physical facilities, purses and accommodations for participants, it may apply for reimbursement. Initially compensation was based on 95% of its average pari-mutuel revenues during 1969; by 1970, the rate of compensation was changed to 100%. Reimbursement when ordered becomes a chargeable expense against each participating municipality any part of which is within 50 miles of such track.
In a proceeding of this kind, courts are prone to measure petitioners’ proof of irreparable injury against the damage *888 which an injunction would create for respondents. The record demonstrates that in order to televise races commencing December 15,1971, Monticello and OTB will be required to make extensive preliminary arrangements. These include the setting up of television cameras at various points, the laying of transmission wires, the employment of television personnel. Of interest also is the fact that during the period from December 15 to January 8, racing will take place in New York City under the sponsorship of local operators. Races will be run on December 15 at Yonkers Raceway, and from January 4 to January 8, 1972, at Roosevelt Raceway, so that the latter track operators will only sustain competition for seven days of broadcasting. It would be palpably unfair to respondents, in the present posture of this litigation, while several of the legal issues remain to be determined by the Appellate Division, Third Department, to grant to petitioners the relief requested on the basis of the broad allegations of damage which they allege. The court is not unmindful of the fears of track operators concerning future attendance at harness tracks, in the face of unrestricted broadcasts of track meets for home consumption. Whether sufficient injury can result therefrom to justify further legislative effort in keeping with the spirit and intent of section 121, only time will tell. In other areas of sport surprising economic benefits have resulted from telecasts. The remedy, if one is needed, must be with the Legislature. Petitioners have failed by clear and convincing evidence to earn the right to injunctive relief.
Since the order of the Appellate Division, Third Department, has reinstated the stay order of the Supreme Court, that portion of petitioners’ application seeking mandatory relief as against the Harness Racing Commission will be denied as moot.
The motion will in all respects be denied. The cross motion to dismiss the petition will be granted.